STRAFFORD.

## WALKER v. WALKER.

The necessity of a plenary remedy for the infringement of a legal right, accepted as a general rule of the common law, authorizes and requires the invention and use of convenient procedure for ascertaining and establishing the right, and obtaining the remedy.

A real action lies at common law for a remainder of land in fee expectant on the termination of a life estate, and such an action is a plain, adequate, and complete remedy for the remainder-man whose title is disputed.

22*

Chapter 43, Laws of 1883, does not authorize a bill in equity to establish the title of real estate in a case in which there is a plain, adequate, and complete remedy at law.

IN EQUITY. Demurrer to the bill in which the following facts are alleged: March 25, 1876, the plaintiff Nathan, by deed conveyed a farm in Durham to himself for life, and to the defendant John, after the death of Nathan; and the same instrument conveyed to John all the personal property of which the grantor should die possessed    The deed provided that it should be void if John should neglect suitably to support Nathan on the farm, and this condition John has not performed.    Prayer that the deed be declared void, and for general relief.

*S. M. Wheeler*, for the defendant.    The condition is subsequent. *Rollins* v. *Riley*, 44 N. H. 9.    A court of equity will not lend its aid to divest an estate for breach of condition subsequent.    *Smith* v. *Jewett*, 40 N. H. 530; *Ricker* v. *Blanchard*, 45 N. H. 39, 47. The title of real estate being concerned, the defendant has a right of jury trial.    Bill of Rights, Art. 20.    A court of equity is not the proper tribunal for trying the title of land.

*Dodge & Caverly*, for the plaintiff.    In *Smith* v. *Jewett*, 40 N. H. 530, the widow took a life estate by devise, upon condition of supporting the daughters who had the remainder.    The widow, as tenant for life, had the possession, and if the condition was broken the daughters could maintain an action at law for the land.    In this case, the plaintiff, having the possession, cannot maintain a writ of entry.    Will he bring trespass, recover nominal damages, and leave the deed in full force at his decease?    The deed must be avoided by him if by any one.    One action at law, or a dozen, will only compensate him for damage done up to the time of bringing suit.    What other action than this will avoid the deed, and give him the ample relief to which he is entitled?

DOE, C. J    The necessity of a plenary remedy for the infringement of a legal right, accepted as a general rule of the common law *(Edes* v. *Boardman*, 58 N. H. 580, 590), authorizes the use of convenient procedure for ascertaining and establishing the right and obtaining the remedy.    *Metcalf* v. *Gilmore*, 59 N. H. 417, 433–435; *Webster* v. *Hall*, 60 N. H. 7; *Clough* v. *Fellows* [ante 133, 134].    As a real action is necessary for the recovery of land held by an undivided title, so a life estate and the remainder in fee may require one real action for the former and another for the latter. Although, in legal quality, the remainder is technically called less, in value it may be more, than the life estate.    The division of the entire title into two parts does not destroy the private right of resorting to the law for an unavoidable and indisputable settlement

of the disputed title of either part, nor suspend the public duty of allowing the controversy to be conveniently brought into court for a prompt adjudication, which, being spread upon the public record, will conclusively show, without extrinsic and controvertible evidence, whether the plaintiff or the defendant is the owner of the property described and claimed in the declaration.

When the fee simple of a tract of land is claimed by A and also by B, a real action, in which an explicit determination of their conflicting claims will be made and recorded, is the right of each party, because, as a matter of common law, each is entitled to a convenient and adequate form of procedure; and, as a matter of fact, a real action is such a form.    This right is not affected by a possibility or a certainty that a like result would be reached in trespass, or some other personal action.   If A, instead of bringing a pertinent suit, conveys to C a life estate of apparently brief duration, and to D the remainder, worth a hundred times as much as the short-lived freehold, and each grantee brings a real action against B, there is no more common-law authority to deprive the more valuable and enduring estate of its full and appropriate remedy, than to turn the claimant of the freehold out of court without trial, and compel him to resort to a personal action that may be indecisive and inadequate.    For the freehold, a personal action may be less inadequate than for the remainder.  B, by taking possession of the land, or going upon it, may give C an opportunity to assert his right of possession in an action of trespass; but if B, having purchased the life estate, is in rightful possession, claiming both estates, but exercising only the rights of a life tenant, or if, claiming the remainder only, he sustains his claim by no act, he is armed with a formidable objection against D's maintaining any personal action that has yet been invented.    The vested estate of the remainder-man, conveyable by his deed, and appliable on execution in payment of his debts, but incapable of being adjudged to be anybody's property in any suit brought to ascertain who the owner is, would exhibit a serious defect, imposed by a misconception of the necessity and convenience which are the common law of procedure.

In an action of some form, the plaintiff is entitled to a judgment settling the disputed ownership of this remainder.   If his heirs, devisees, or grantees may obtain such a judgment in a writ of entry after his decease, he is not obliged to leave them a contest which he for various cogent reasons may wish to begin and end.   By his death, or by any delay, important evidence may be lost.   He may be unable to carry on the farm.   An estate in it for his life may be of trifling value, and insufficient for his support, and he may be prevented by the defendant's apparent title from making a disposition of the remainder necessary for his sustenance.   With an abundant estate, he may be thrown upon the public charity by the defendant's recorded deed and false claim.   The plaintiff's grantee

of the remainder claimed by the defendant, would be the grantee of such a risk of litigation as prudent men do not knowingly purchase. A false claim, raising a cloud over the title of the plaintiff's farm that may reduce him to the relief of the pauper law, is a violation of his legal right, and a wrong that is not remediless. The question is, not whether his case is one of such hardship as to require a real action, but whether in any case of extreme necessity a real action lies for a remainder of land in fee expectant upon a life estate. Necessity and convenience create forms of action which may be employed in cases in which they are appropriate remedies.

The defendant may contend that he performed the condition of the deed as long as he was permitted by the plaintiff, who expelled him from the farm which the defendant has neither occupied nor entered since his expulsion. He may do nothing for which trespass would lie. His fault may be an omission to support the plaintiff, and a denial of that omission. The sole question may be, whether a certain kind of support, which the plaintiff refused to receive from him, was suitable; and the circumstances may be such that no form of personal action heretofore introduced would ensure such a decision of that question as would be an adjudication of the contested forfeiture of real estate. In an action of trespass, the defendant could not plead soil and freehold: he does not claim a freehold: and his plea might not answer the plaintiff's purpose: it might not inevitably result in a judgment expressly and specifically establishing the title of the remainder. *Metcalf* v. *Gilmore*, [*ante* 174, 187, 189] ; *Palmer* v. *Russell*, 43 N. H. 625; *Arnold* v. *Arnold*, 17 Pick. 4; *Dutton* v. *Woodman*, 9 Cush. 255, 261; *Gilbert* v. *Thompson*, 9 Cush. 348; *Johnson* v. *Morse*, 11 Allen 540; *Morse* v. *Marshall*, 97 Mass. 519, 523; *White* v. *Chase*, 128 Mass. 158, 159; *Foye* v. *Patch*, 132 Mass. 105, 111; *Stapleton* v. *Dee*, 132 Mass. 279, 281. The defendant may think it for his interest to avoid such a judgment in the plaintiff's lifetime, and may be comparatively indifferent to a judgment, or several judgments, for the damages the plaintiff can recover. The plaintiff has no assurance that in trespass the title would be either tried, or determined without trial, or that, if it were tried and determined in his favor, parol evidence would not be necessary to show what was tried and what was adjudicated; and a judgment, needing parol evidence to prove the matter in issue and the point decided, falls far short of his certain and adequate remedy. His title, established by such a judgment, might not be a desirable investment. It might be clouded, doubtful, and unsalable, as it is now and will continue to be while it depends upon the view a jury or other tribunal may take of such evidence as can be found on the question whether the defendant has suitably supported the plaintiff. Some might fear, that, on the question whether the forfeiture was put in issue and decided in an action of trespass, the opinion of the tribu-

nal would be influenced by their view of the merits of the question of forfeiture. Many might decline to negotiate for a judgment-title requiring parol evidence to sustain it against the defendant's recorded and apparently unclouded proprietorship of the remainder. A satisfactory remedy for the owner of the fee, the life estate, or the remainder, is something more speedy, less harassing, and less expensive than a suit at law, and a subsequent suit in chancery for the removal of a cloud; and the burden of proving by extrinsic evidence that his title was settled in a personal action (*Morgan* v. *Burr*, 58 N. H. 470), however heavy or light the burden might be in chancery or in negotiations with purchasers, would be an unnecessary inconvenience.

" The manner of allegation in our courts may be said to have been first methodically formed and cultivated as a science in the reign of Edward I. From this time, the judges began systematically to prescribe and enforce certain rules of statement, of which some had been established at periods considerably more remote, and others apparently were then, from time to time, first introduced. None of them seem to have been originally of legislative enactment, or to have had any authority except usage or judicial regulation." Stephen Pl. 123. " Till the end of Edward IV, the possession was not recovered in an *ejectionæ firmæ*, but only damages." Hale Hist. Com. Law, *c.* 8, *p.* 201. The action of ejectment is said " to have been invented in the reign of Ed. II, or in the early part of that of Ed. III." " In favor of this mode of remedy, the courts determined that the plaintiff was entitled not only to recover the damages claimed by the action, but should also, by way of collateral and additional relief, recover possession of the land itself. * * * In consequence of the establishment of this doctrine, which gave an ejectment an effect similar to that of a real or mixed action, claimants of land were led to have recourse to it in lieu of those inconvenient remedies. Regularly, indeed, none could resort to this form of suit but those who had sustained ouster from a term of years, such being the shape of the complaint; but it was rendered much more extensive in its application, by the invention of a fictitious system of proceeding. * * * This fictitious method, being favored and protected by the courts, passed into regular practice; and the consequence is, that ejectment has long been the usual remedy for the specific recovery of real property." Stephen Pl. 12, 13. " In ejectment, the whole method of proceeding is anomalous, and depends on fictions invented and upheld by the courts for the convenience of justice, in order to escape from the inconveniences which were found to attend the ancient forms of real and mixed actions." Stephen Pl. 32. By less exercise of the inventive faculty, a judgment for land, enforcible by a writ of possession, could be rendered in trespass, or other personal action in which the title is settled; and the construction of a form of real action is no more difficult than the

invention or the reconstruction of the personal action of eject-
ment.

The assize of novel disseizin is said to have been invented by
Glanvil, chief-justice under Henry II, as a more convenient rem-
edy for the recovery of lands·when the owner had been recently
disseized. The disseizin by election, used in this assize, was a
mere fictitious suggestion, inserted in the process to give the assize
jurisdiction of a trespass, by one of those astute contrivances which
have not been uncommon in the history of English law. As a
remedy for the recovery of a freehold, this assize at length went
nearly if not altogether out of use, and was succeeded in practice
by the writ of entry, which was in its turn supplanted by the action
of ejectment in which no freehold was recovered. *Tappan* v. *Tap-
pan*, 36 N. H. 98, 113, 114, 115, 116.; 3 Bl. Com. 184. The relig-
ious houses "had the honor of inventing those fictitious adjudica-
tions of right which are since become the great assurance of the
kingdom, under the name of common recoveries." 2 Bl. Com. 271.
The invention of the action of replevin is ascribed to Glanvil.
Stephen Pl. (5th Am. ed.) App. cx.

The objection to the invention of a form of action is based
on the idea that the remedial forms of the common law come
from· some other source than human design; or that courts, con-
tinuously charged by that law with the duty of allowing conven-
ient forms of remedy to be used, are empowered by the same
law to permit the use of forms capable of prohibiting the per-
formance of the duty by themselves and their successors; or that
the introduction of the whole existing remedial system of the
common law, by progressive development through many ages, re-
cent and remote, has been an unlawful usurpation of legislative
power by judges who should have defeated justice by permitting
no common-law procedure whatever, but whose illegal precedents
are law. Until it is shown whose and what authorized edict, of
ancient or modern date, annulled the common-law principle that
requires the invention and use of common-law procedure, and com-
mands common-law courts to allow convenient remedies, the
duty imposed by that principle cannot lawfully be left unper-
formed. The test of the legality of a form of action, or other
pleading, is not the time of its invention, but its utility as a method
of vindicating rights entitled to the best forms and methods that
can be produced.

The plaintiff has a plain, adequate, and complete remedy in a
real action, in which there must be a decisive record of a manifestly
conclusive· decision of the question of forfeiture: and at the trial
term he may have leave to amend his bill by filing a declaration at
law. In abundant caution, one count can be drawn in the form of
an ordinary writ of entry. A judgment upon such a count would
leave the life estate open to no contention. A plea of nontenure
of the freehold might raise a question the decision of which is not

now called for.   Another count, not alleging a disseizin of the freehold, may be in a plea of land, wherein the plaintiff demands of the defendant a tract of land lying in, &c., bounded, &c.; whereupon the plaintiff complains, and says that within twenty years last past he was seized of the demanded premises in his demesne as of fee, and being so seized, he executed and delivered to the defendant a deed, &c. (stating the substance of the deed); and the defendant accepted the same, and undertook to perform the condition thereof, but has failed to perform said condition, whereby he has forfeited the estate in remainder conveyed to him by said deed, and said estate has revested in the plaintiff.   But the defendant still claims said estate.   Wherefore the plaintiff prays judgment establishing said forfeiture and his title in fee simple absolute, against the defendant, and a writ of possession, and other process, for executing said judgment, defending his rights, and giving him the relief to which he is by law entitled.

Another count may be in a plea of land, wherein the plaintiff demands against the defendant a certain estate of remainder in a (described) farm; and whereupon the plaintiff Nathan says:—March 26, 1876, Nathan, owning said farm, and retaining therein an estate for his own life, conveyed the remainder to John, by deed duly recorded, on condition that John suitably support Nathan during his life.   John has not performed the condition of the deed, and by breach of the condition has forfeited said estate in remainder, but still claims said estate; and his claim and record of title are a cloud upon Nathan's title, and prevent his making either an absolute or a conditional sale of the farm, or of a remainder therein, or making thereof any convenient disposition upon which he can depend for the necessaries of life, and for the support and care required by the infirmities of his old age; whereby he is exposed to destitution, and disabled to secure the comfortable maintenance which his farm would enable him to obtain but for the defendant's false and wrongful claim, and the defendant's title, forfeited in fact for breach of the condition subsequent, but apparently valid on the record of deeds.   Wherefore the plaintiff prays that his deed to the defendant be adjudged void; that the forfeiture of the remainder thereby conveyed be established by a judgment; and that the judgment be enforced by a writ of possession.   Another count, in some form of personal action, can seek a judgment of forfeiture of the remainder of the personal property.   However defective such a declaration may be, it can easily be made sufficient.

A judgment determining the title of the remainder will be conclusive without service of any process for its enforcement.   *Creighton* v. *Proctor*, 12 Cush. 433, 437; *Farwell* v. *Rogers*, 99 Mass. 33, 35.   It was held sixty-nine years ago, that a judgment for such a remainder can be executed by a writ of possession during the life estate of a third person.   *Penniman* v. *Hollis*, 13 Mass. 429, 432. If the plaintiff holds both estates, merged in a fee, there will be no

difficulty, practical or theoretical, in the service of a writ of posses-
sion.   The defendant was to live on the farm while he performed
the condition of his deed *( Wales* v. *Mellen,* 1 Gray 512); and if
the condition is broken, the plaintiff may need a process of ouster.
The judgment, and any necessary process for carrying it into
effect, being directed to the ends of justice, cannot be obstructed
by imaginary barriers óf form.   *Davis* v. *Bradford,* 58 N. H. 476,
480.

"Any person in possession of real property, claiming an estate
of freehold therein, or an unexpired term of not less than ten
years, may maintain a bill in equity against any person who makes
a claim adverse to his estate  *  *  *  ; and  *  *  *  the
court shall determine the whole question of title."   Laws of 1883,
*c.* 43.   This act was intended for the relief of persons whose pos-
session of land should be held to be an obstacle in the way of their
maintaining actions at law for the establishment of their disputed
titles (20 Am. Law Reg. 561), and not to give a bill in equity to
those who have a plain, adequate, and complete remedy at law.
It is an application of the general unwritten rule, affirmed in Gen.
Laws, *c.* 209, *s.* 1, that inadequacy of redress at law is a ground of
chancery jurisdiction.   The construction of the act of 1883 is con-
trolled by the presumption that the legislature did not intend to
authorize a chancery suit for the enforcement of a forfeiture, and
the divesting of an estate in land for breach of condition subse-
quent, in a case in which the remedy at law is ample.

*Case discharged.*

BLODGETT, J., did not sit: CARPENTER, J., dissented on the
question of introducing a new form of action: the others con-
curred.